IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-HC-2051-BR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | ORDER |
| DAVID GLOSHAY, | ) | |
| Respondent. | ) | |

This case, brought under 18 U.S.C. § 4248, comes before the court on the government's motion (DE # 38) for a determination that the United States Department of Justice ("DOJ") is not obligated to pay for psychiatric or psychological examinations of respondents that are conducted by additional examiners selected by respondents pursuant to 18 U.S.C. §§ 4248(b) and 4247(b). The motion is supported by a memorandum. (DE # 39.) Respondent filed a memorandum in response[1] (DE # 42), and the government filed a reply. (DE # 46.) The parties subsequently filed a stipulation (DE # 53) relating to the government's motion. The motion is now fully briefed and ripe for adjudication. For the reasons and on the terms set out below, the stipulation will be disapproved and the motion will be denied.

**I. BACKGROUND**

At a status conference in this and several other § 4248 cases on 16 February 2011 (see DE # 36), the government announced that it did not deem itself, that is the DOJ, obligated to pay for psychiatric or psychological examinations of respondents that are conducted by additional

---

[1] Although respondent was directed to file a response to the government's motion, as discussed below, respondent titled his filing a motion, presumably because he seeks an order directing the DOJ to pay the costs in issue. The court deemed a response by respondent sufficient to assert this request. The court will therefore treat respondent's filing as a response, and the Clerk is directed to terminate the filing as a motion.

examiners[2] selected by respondents, pursuant to 18 U.S.C. §§ 4248(b) and 4247(b), except in only two cases in which it claimed it had expressly agreed to pay. This announcement came after prior representations by counsel for the government in open court that the government would pay for the first examination by a respondent-selected examiner. The government had never agreed to pay for any such examinations after the first. Because the respondent in this case, as well as every other § 4248 case before this court, has been determined to be entitled to appointed counsel as an indigent, the alternative to the DOJ as a source of payment for examinations is Criminal Justice Act ("CJA") funds. See 18 U.S.C. § 3006A. In other words, any payment must come from either the DOJ or CJA funds.

To facilitate prompt resolution of the issue, on 18 February 2011, the court entered an order (DE # 37) directing the government to file a motion for the relief it sought and directing respondent to file a memorandum in response. The government filed the instant motion and respondent filed his response pursuant to this order.

The order also directed the government to serve its motion and memorandum on counsel for respondents in all other § 4248 cases before Judges Flanagan, Dever, and Howard, and the undersigned (the pre-hearing proceedings in which are before the same magistrate judge). The order allowed such counsel to submit supplemental responses to the government's motion, with a motion for leave to file, in the event they wished to address matters not covered by respondent's counsel in this case, the Office of the Federal Public Defender ("OFPD"). The purpose of these arrangements was, to the extent practicable, to make this case a test case on this payment issue,

---

[2] The term "additional examiner" as used in this order is synonymous with that term as it appears in 18 U.S.C. § 4247(b).

potentially obviating the need to litigate it from scratch in other cases.³ No such supplemental responses were submitted.

Subsequent to the filing of respondent's memorandum, the parties filed their stipulation on 26 April 2011. It purports to withdraw respondent's response to the government's motion (see Stip., DE # 53, ¶ 1) and sets out the parties' agreed positions on six specific issues relating to the payment of mental health examiners and other experts. (See id. ¶¶ 2-7.)

## II. DISCUSSION

A.      Purported Withdrawal of Respondent's Response to Motion

The parties' stipulation states that the respondent's response to the government's motion "should be and hereby is withdrawn." (Id. ¶ 1.) This assertion is ill-founded. As indicated, the government's motion and respondent's response were not filed on the initiative of the parties, but at the direction of the court as a means of obtaining the requisite briefing on the issue of responsibility for payment of respondent-selected psychiatric and psychological examiners. The court having ordered the filing of the motion and the response, neither may be withdrawn without the court's approval. None will be given. The motion and response have served their intended purpose, and the question at issue is now appropriately before the court for resolution.

The stipulation does not otherwise render the motion and response moot. As detailed in Section II.F., infra, the stipulation suffers from numerous deficiencies and will be disapproved. The court will therefore proceed with its analysis of the motion as briefed by the parties without

---

³ Notwithstanding this purpose, the OFPD submitted memoranda in two other cases that are materially the same as the memorandum it filed in this case and in response to which the government filed memoranda. See United States v. Wilson, No. 5:08-HC-2060-D (DE ## 26, 32); United States v. Barrett, No. 5:07-HC-2097-FL (DE ## 42, 46.)

regard to the positions stated in the stipulation.[4]

B.     Psychiatric and Psychological Examinations under 18 U.S.C. § 4248

Section 4248 provides for the civil commitment of a person in the custody of the Bureau of Prisons, among other persons,[5] who is determined to be a sexually dangerous person within the meaning of 18 U.S.C. § 4247(a)(5). 18 U.S.C. § 4248(d). Proceedings against a person under § 4248 are initiated by the government's filing of a certificate of sexual dangerousness in the district of the person's confinement. 18 U.S.C. § 4248(a). The filing of the certificate stays the person's release until completion of the proceedings provided for in the statute. Id. These proceedings include a hearing before the court on whether the person is a sexually dangerous person. 18 U.S.C. §§ 4247(d), 4248(c).

Before the date of the hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4248(b). Under § 4247(b), any such examination "shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner." 18 U.S.C. § 4247(b). Most significantly for present purposes, the statute goes on to provide that "[e]ach examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, <u>upon the request of the defendant an additional examiner may be selected by the defendant.</u>" Id. (emphasis added). Section 4247(c) provides

---

[4] The positions set out in the stipulation conform closely to those taken by the government in its memorandum.

[5] The other persons covered by § 4248 are those "who ha[ve] been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person . . . ." 18 U.S.C. § 4248(a).

that the report on any psychiatric or psychological examination ordered "shall be prepared by the examiner designated to conduct the . . . examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government, and shall include . . . [certain specified contents]." 18 U.S.C. § 4247(c). The statute does not specify which party pays for any examinations (or reports), including examinations by additional examiners.

C.       The Government's Argument Supporting Its Motion

In the memorandum supporting its motion, the government contends that it should not be obligated to pay for the examinations by additional, respondent-selected examiners (including the related reports) because under the "American Rule" each party pays its own expenses at trial, citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975). Accordingly, the government argues, absent statutory authority or DOJ regulations that provide otherwise, there is no legal basis upon which to order the DOJ to pay for the examinations (and related reports) by additional examiners. The government states that "the Justice Management Division in Washington, D.C. must determine whether the payment of these fees is covered by the authority Congress set when it appropriated the budget for the Department of Justice's Fees and Expenses of Witnesse[s] (FEW) Fund" and that, "[t]o date, the United States Attorney has not received legal authority to agree to pay for the experts in these cases across the board." (Gov.'s Mem., DE # 39, at 8.)

The government further points out that the Guidelines for Administering the CJA and

5

Related Statutes ("CJA Guidelines"), 7A Guide to Judiciary Policy ("Guide") § 320.20.60,[6] issued by the Administrative Office of the United States Courts ("AOUSC"), do not address allocation of the costs of examinations in § 4248 cases, as they do for cases under 18 U.S.C. §§ 4245 and 4246, the other types of cases in which additional examiners may be selected.[7] The allocations in the CJA Guidelines reflect an agreement between the AOUSC and the DOJ as to which entity will pay. The government contends that because the CJA Guidelines do not expressly allocate payment obligations to the DOJ with respect to § 4248 cases, these expenses should be paid out of CJA funding.

The government further asserts that it is not estopped from taking its current position on payment because of its statement at a 28 October 2010 status conference that the DOJ would pay for the cost of the first additional, respondent-selected examiner. While the government concedes that it did "indicate that the [DOJ] would pay for the cost of the [first] additional examiner" (Gov.'s Mem., DE # 39, at 5), it states that it "intended to say that the government had made a proposal to the Federal Public Defender to pay in this manner." (Id. at n.3.) The government points out that it also indicated at the status conference that it would not be responsible to pay for any trial testimony that the additional examiner might provide and that the normal Civil Rules would apply with regard to payment of the expense of any depositions of the examiner.

The government also represents that subsequent to the 28 October 2010 status

---

[6] A copy of § 320.20.60's "Summary Chart: Responsibility for Payment of Psychiatric and Related Expert Services" has been provided by the government at DE # 39-4 and by the respondent at DE # 42-1.

[7] The CJA Guidelines also provide for allocations in the cases under the other statutes in Chapter 313 of Title 18 of the United States Code, namely, §§ 4241-4244.

6

conference, it was in continuing discussions with the OFPD as to who would be responsible for these expenses and that, upon being unable to come to a resolution, the parties agreed to raise the issue at the 16 February 2011 status conference. The government contends that even if the court were to decide that the government is estopped from taking its current position, such estoppel should apply to no more than the 17 cases[8] in which, at the time of the government's motion, examiners had already been hired and had started substantial work in reviewing files. (Id. at 14-15.)

D.    Respondent's Argument in Opposition to the Government's Motion

In its memorandum opposing the government's motion, respondent argues that the government's position is based on the erroneous assumption that an additional examiner selected by the respondent is working for the respondent. Instead, respondent contends, an additional examiner is working for the court. In support of his contention, he points to the various statutory provisions providing for the court's involvement with respect to psychiatric and psychological examinations by additional, respondent-selected examiners. For example, § 4247(b) provides that although "an additional examiner may be selected by the [respondent]," "[e]ach examiner shall be designated by the court." 18 U.S.C. § 4247(b). In addition, under § 4248(b), the examinations by the additional examiners are ordered by the court and, under that section and § 4247(c), the reports of the additional examiners are filed with the court. 18 U.S.C. §§ 4247(c), 4248(b). Because the examiner is the court's expert, respondent argues, the American Rule has no application.

Respondent also argues that the government is estopped from taking its current position

---

[8] The government provides a specific list of these cases in Exhibit D to its memorandum. (DE # 39-5.)

7

based on, among other considerations, the government's "repeated acquiescence to orders issued by the court[9] indicating that the Department of Justice would bear the expense of the expert appointed under § 4247(b) . . . ." (Resp.'s Mem., DE # 42, at 5.) Respondent further asserts that because an additional examiner is not a "defense tool," funds from the CJA cannot be used given that the intended purpose of those funds is to provide a defendant or, in the § 4248 context, a respondent with adequate representation. (Id. at 8 (citation and internal quotation marks omitted).)

Respondent also contends that the CJA Guidelines can, in fact, be read to require the DOJ to pay for examiners under § 4248 as it does in cases brought under 18 U.S.C. § 4246. Section 4246 deals with cases in which a defendant is facing release and the issue for the court is whether his release would present a substantial risk of bodily injury to another or serious damage to the property of another. Respondent's argument is that the substance of the CJA Guidelines that addresses payment for examiners is derived from opinions of the Comptroller General, see 59 Comp. Gen. 313 (1980), 50 Comp. Gen. 128 (1970), and that the rationale of these opinions justifies application of the CJA Guidelines allocation provisions for § 4246 cases to § 4248 cases.

E.   Controlling Effect of Principles in United States v. Cox

The court finds that principles in the Fourth Circuit's decision in United States v. Cox, 964 F.2d 1431 (4th Cir. 1992), control resolution of the government's motion. That case was a proceeding under § 4246 before this court. In Cox, this court ordered a psychiatric examination of the defendant by an additional examiner selected by the defendant pursuant to § 4247(b). The

---

[9] See, e.g., Scheduling Order, DE # 21, at 4.

8

Case 5:08-hc-02051-BR   Document 58   Filed 05/19/11   Page 8 of 16

government refused to pay for the examination. Defendant had been found to be indigent. Therefore, the basic issue that was before the court then is analogous to the issue here – whether the psychiatric examination of the defendant by the additional examiner selected by the defendant had to be paid out of DOJ funds or CJA funds.

This court declined to resolve the dispute on the merits. Instead, it ruled that "[d]isputes such as this are properly resolved by the responsible agencies in Washington, not in this court." United States v. Cox, No. 5:90-HC-710-BR, slip op. at 5 (E.D.N.C. Mar. 27, 1991) (unpublished). The Fourth Circuit affirmed. It characterized the dispute as "an internal fiscal dispute within the federal bureaucracy," Cox, 964 F.2d at 1435, and stated its agreement with the foregoing language of this court. Id. at 1434. The appellate court then held that "final resolution, for prospective cases, regarding which government agency bears responsibility for fees under section 4246 should be made by negotiation between the interested agencies or by submission of the matter to the Comptroller General of the United States." Id. at 1434.

Here, the court finds that, as in Cox, the dispute over whether the psychiatric examination of respondent by the additional examiner must be paid out of DOJ or CJA funds should be resolved by negotiations between the interested agencies or by submission to the Comptroller General. The differences that exist between proceedings under § 4246 and § 4248 are not material to the principles controlling this determination. The allocation should, of course, address the costs of all examinations by all examiners appointed pursuant to § 4248(b) and § 4247(b) (including the costs of the associated reports), whether or not the examiners are selected by respondents. The allocation should also encompass the testimony costs of examiners (*i.e.*, those associated with their testifying at the hearing), their deposition costs, and the costs of

9

experts not appointed under § 4248. The court notes that all such costs appear to be covered in the agreed allocation of costs under the other statutes in Chapter 313 of Title 18. See, e.g., 7A Guide § 320.20.60(f)-(g), (i).

F.      Parties' Stipulation

The stipulation filed by the parties reads in relevant part as follows:

Respondent and petitioner, by the filing of this Stipulation, hereby agree and stipulate to the following:

   1.   The Motion specified above [*i.e.*, respondent's response] should be and hereby is withdrawn.

   2.   The expert chosen and designated by respondent is and should be considered by the parties and by this Court to be respondent's expert, not an independent court-appointed expert.

   3.   Petitioner and respondent each has a right to choose one or more mental health examiners, using the normal Federal Rules of Civil Procedure.

   4.   Either party may choose its own mental health examiner, to be paid by that party.

   5.   Any mental health examiner chosen by petitioner should be paid for by the Department of Justice.

   6.   In accordance with § 4247(b) an additional mental health examiner maybe [sic] chosen by the respondent, to the extent the terms of § 4247(b) apply. The payment for this additional examiner's services is not resolved by this agreement.

   7.   This stipulation is without prejudice for either party to ask for the Court to appoint an independent court-appointed expert under Rule 706 of the Federal Rules of Evidence; but the Court (not the parties) should choose such expert, and the fees payable to such expert should be charged as costs to the losing party to this litigation, pursuant to Rule 706 and 18 U.S.C. §1920.

(Stip., DE # 53, at 1-2.) The court finds that the stipulation does not satisfactorily address the payment issues before the court.

10

Perhaps most notably, the stipulation appears to be based on a misapprehension of what procedures have governed and will govern the selection and appointment of psychiatric and psychological examiners in this case and all other § 4248 cases before the undersigned. The stipulation posits selection of examiners under a variety of procedures, only one of which is the procedure under § 4247(b) provided for by § 4248(b). For instance, the stipulation states that each party "has a right to choose one or more mental health examiners, using the normal Federal Rules of Civil Procedure." (Id. ¶ 3.) The parties also purportedly may ask the court to appoint an independent court-appointed "expert" under Federal Rule of Evidence 706. (Id. ¶ 7.) Mental health examiners are not excluded from this provision and are therefore presumably included in it. Regarding § 4247, the stipulation states that "an additional mental health examiner maybe [sic] chosen by the respondent, to the extent the terms of § 4247(b) apply." (Id. ¶ 6 (emphasis added).) The process envisioned by the stipulation appears to be party-driven with minimal involvement by the court.

In the context of this and the other § 4248 cases before this court, the process posited virtually ensures duplication of effort, the waste of limited funds and other resources, and needless delay. By relegating § 4247(b) to the sidelines, this process may also violate Congress's intent that this statute be the principal means of appointing examiners in § 4248 cases.

The court need not resolve that issue, however, because it finds that, with the one exception discussed below, the efficient administration of § 4248 cases requires that all examiners be appointed under § 4247. It is the procedure that Congress designed specifically for appointment of examiners in § 4248 cases and therefore has this advantage over the general

11

procedures on which the stipulation primarily relies. In addition, use of § 4247 ensures adequate court supervision over the appointment of examiners.

The one exception to reliance on § 4247 is respondent's ex parte retention of an examiner solely for trial preparation, pursuant to Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. Even here, though, the court expects respondents to obtain court approval before retaining such an examiner. Such court approval is necessary to ensure the orderly and efficient conduct of proceedings. Respondent will have to show that retention of such an examiner is necessary in light of the appointment of other examiners under § 4247.[10] There is no comparable exception for ex parte retention of examiners by the government because the law does not provide for ex parte examinations of respondents by the government. See Fed. R. Civ. P. 35(b)(1) (providing for reports of examiners to be produced to party examined upon request); 18 U.S.C. § 4247(c) (requiring that examination reports be filed with the court and served on counsel for the respondent and government).

In addition to these deficiencies, the parties' stipulation is incomplete. It states that it does not resolve who pays for "an additional mental health examiner . . . chosen by the respondent" under § 4247(b). (Stip., DE # 53, ¶ 6.) It is unclear whether the term "additional" as used here has the same meaning as in the statute or means a second or subsequent respondent-selected examiner under § 4247(b). In either event, the lack of an agreement regarding payment for such examinations renders the stipulation incomplete.

The court also notes that the stipulation provides that the "expert chosen and designated by respondent is and should be considered by the parties <u>and by this Court</u> to be respondent's

---

[10] Also, to the extent that such an examiner is to be paid from CJA funds, respondent would have to demonstrate that the examination was "necessary for adequate representation" of respondent as required by 18 U.S.C. § 3006A(e)(1).

12

expert, not an independent court-appointed expert." (Id. ¶ 2 (emphasis added).) It is doubtful whether this broad statement is needed in a stipulation whose ultimate purpose is simply to indicate to the court from which of two sources, DOJ or CJA funds, it has been agreed particular costs are to be paid. The court is also concerned that adoption of such a characterization would have implications for issues not now before the court. It may be that other issues regarding examiners are more appropriately addressed in terms of the specific procedures and other provisions that apply to them rather than in terms of to which party the examiner belongs. The court therefore declines to adopt the proposed characterization of the nature of respondent-selected examiners.

Lastly, the form of the stipulation is wanting. Rather than a stipulation that applies to § 4248 cases generally, it deals solely with this case. Comparable stipulations have been filed in other individual cases. There is also no express indication that the stipulation is one by the principal entities in the federal bureaucracy, as Cox contemplates, rather than a stipulation between the local offices of the respective parties. For efficiency's sake, it would be optimal to have a single stipulation applicable to § 4248 cases generally, similar in design to the CJA Guidelines.

The numerous inadequacies noted compel the court to disapprove the parties' stipulation. It will do so, of course, without prejudice to the de novo negotiation of an agreement between the interested agencies or submission of the matter to the Comptroller General.

G. <u>Interim Payment Arrangement</u>

Pending this long-term resolution of the allocation issue, there is a need for an interim arrangement for the timely payment of examiners selected by respondents, as well as related

13

costs. As respondents have advised the court, without such an arrangement in place, examiners selected by respondents may be unwilling to conduct examinations, and substantial delay in proceedings could result. The court finds that the most appropriate arrangement is for such examinations to be paid in accordance with the CJA Guidelines applicable to § 4246 cases, 7A Guide § 320.20.60(g), subject to the ultimate allocation reached. Interim use of established CJA Guidelines is appropriate because the government and the OFPD are well versed in their application, and they are straightforward.

Use of the CJA Guidelines for § 4246 cases in particular is appropriate because those are the types of cases subject to the CJA Guidelines allocation provisions that are the most analogous to § 4248 cases. Most basically, cases under § 4246 are one of the only two other types of cases besides § 4248 cases in which additional examiners may be selected. The remaining type is cases under § 4245.

Additionally, as between § 4245 and § 4246 cases, § 4248 cases appear to have much more in common with § 4246 cases. In both § 4246 and § 4248 cases, the person in question faces release absent an adverse determination, and the ultimate issue before the court concerns the person's dangerousness. In contrast, § 4245 deals with cases in which a defendant serving a sentence objects to transfer to a facility for treatment or care, and the issue before the court is whether the defendant is in need of custody for care or treatment in a suitable facility.

The CJA Guidelines for § 4246 cases shall be followed with respect to not only examination costs, including costs of the associated reports, see 7A Guide § 320.20.60(g)(1), but also testimony costs, id. § 320.20.60(g)(2). Inclusion of testimony costs in the interim payment arrangement is necessary because examiners selected by respondents need to have these costs

timely paid no less than the examination costs. For comparable reasons, the examiner costs incurred in testifying at a deposition shall be deemed to be included in the testimony costs for purposes of the interim arrangement. The CJA Guidelines for § 4246 cases provide, of course, for payment of examination and testimony costs out of DOJ funds.[11]

As to experts other than examiners appointed under § 4248, the CJA Guidelines shall also control during the interim period for analogous reasons. 7A Guide § 320.20.60(i). They provide generally that the costs are borne by the party requesting the expert.

H.  Estoppel

The one issue remaining is whether, as respondent contends, the government is estopped from denying any obligation to pay with respect to up to 17 cases. Respondent relies on the estoppel ruling in Cox. The Fourth Circuit held that the government was estopped from denying payment for the additional examiner of defendant in that particular case, but not future cases, because the OFPD had relied on representations by the government that it would pay and therefore had not sought any appropriation for such costs. Cox, 964 F.2d at 1434-35.

The court finds that in cases subject to the interim arrangement adopted herein, the issue of estoppel is moot. Pending final resolution of the payment obligation, there can be no detrimental reliance by respondents because the costs of each additional examiner are being paid by the government. The ultimate resolution, in turn, will be the product of negotiations among the relevant entities or a determination by the Comptroller General, not any representations by the government in the pending litigation.

---

[11] This analysis by the court of the CJA Guidelines for § 4245 and § 4246 cases is solely for purposes of the interim payment arrangement. The court has not considered and expresses no opinion on whether or not either set of CJA Guidelines or other principles would provide an appropriate basis for the ultimate resolution of the cost allocation issue.

15

## III.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that:

1. The parties' attempt to withdraw respondent's response to the government's motion pursuant to their stipulation (DE # 53) is DENIED and the stipulation is otherwise DISAPPROVED without prejudice.

2. The government's motion (DE # 38) is DENIED.

3. In all cases before the undersigned brought pursuant to § 4248, the DOJ shall pay the costs of additional examiners selected by respondents pursuant to § 4247(b) in accordance with the CJA Guidelines for § 4246 cases, 7A Guide § 320.20.60, and the terms of this order, pending ultimate resolution of the allocation of responsibility for payment of such costs within the federal bureaucracy.

4. The DOJ's obligation to pay as provided herein shall remain in effect until the ultimate resolution of the allocation issue has been reached within the federal bureaucracy, and the government on motion obtains relief from this order.

5. The Clerk is DIRECTED to serve a copy of this order by such means as he deems appropriate on counsel in all other § 4248 cases before Judges Flanagan, Dever, and Howard, and the undersigned.  The Clerk shall also transmit a copy to Judge Boyle.

This 19 May 2011.

                                                  W. Earl Britt
                                                  Senior U.S. District Judge