UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-HC-2051-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | RESPONDENT'S PROPOSED FINDINGS |
| | ) | OF FACT AND CONCLUSIONS OF LAW |
| DAVID GLOSHAY, | ) | |
| Respondent | ) | |

The Respondent, David Gloshay, comes by and through undersigned counsel, and, pursuant to Local Civil Rule 52.1, respectfully submits and asks the Court to enter the following findings of fact and conclusions of law in this matter.

## I. INTRODUCTION

The United States of America ("Petitioner") started this civil action on April 16, 2008, seeking to commit David Gloshay ("Respondent") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). 18 U.S.C. § 4248. Docket Entry ("DE") 1. The Government's petition states that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act. On the government's certification, the Court stayed Mr. Gloshay's release from custody pending a hearing to determine whether he qualifies for commitment as a sexually dangerous person. The government's petition was filed 13 days before Mr.

Gloshay's scheduled date of release from BOP custody, which was April 29, 2008.  *See* DE-1-2.

An evidentiary hearing and bench trial is scheduled in this case for December 1 and 2, 2011.  After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that the government has failed to establish by clear and convincing evidence that Mr. Gloshay is sexually dangerous to others as required by the Act and the Constitution.

## II.  FACTS

1.  David Gloshay is a 38-year old Native American male.  He was born in Santa Fe, New Mexico, on [REDACTED], the oldest of three children born to David Gloshay, Sr., and Nora (nee Otole) Gloshay.  Pet. Ex. 6 at 8.

2.  At the time of his hearing, Mr. Gloshay will have been incarcerated more than three and one half years past his scheduled release date of April 29, 2008.

### A.  __Personal History__

3.  Although he was born in Santa Fe, New Mexico, Mr. Gloshay's early childhood years were spent in White River, Arizona, on the Fort Apache Indian Reservation, his father's home, where he was raised by his Aunt Nancy James.  When he was five years old, his parents divorced, and his mother retained custody of Mr. Gloshay and his siblings.  He then moved with his mother

and siblings to the Jicarilla Apache Indian Reservation in Northern New Mexico, his mother's home. Pet. Ex. 6 at 8.

4. Due to his mother's alcohol abuse, he was placed by court in a dormitory, where he lived from ages eight to 18, and after leaving the dormitory he lived back-and-forth on the White River, AZ, Reservation, staying with his Aunt Nancy James, and the Jicarilla, NM, Reservation, where his mother lived. Pet. Ex. 36 at 9-11.

5. Mr. Gloshay has never been married, but from approximately June 1998 through mid-2000 he had an intermittent relationship with the woman who was the complaining witness in the offense for which his (now expired) sentence for aggravated sexual abuse was imposed; Mr. Gloshay has a son, born in 1999, who was conceived as a result of that offense conduct. Pet. Ex. 19 at 12.

B. **Criminal and Sexual Offense History**

6. Mr. Gloshay has been convicted twice for Crime on an Indian Reservation, aggravated sexual abuse, 18 U.S.C. §§ 1153, 2241(a)(1) and 2246(2)(A). Both convictions were in U.S. District Court for the District of New Mexico, docket numbers 94-202-01 JP ("The 1994 Conviction") and 1:01-cr-446-01-BB ("The 2001 Conviction"). Pet. Ex. 5 and 15.

### 1. The 1994 Conviction

7.  Mr. Gloshay's first conviction for a sexual offense was punished by a term of 51 months imprisonment followed by supervised release for a term of five years.  Pet. Ex. 5.

8.  The offense conduct in that matter involved a 17 year-old female resident of the Jicarilla BIA Dormitory.  On July 5, 1993, she and a male companion checked out of the dormitory, and they were accompanied by Mr. Gloshay.  They went up a hill near the dormitories and, a short time later, the male companion left, and Mr. Gloshay, who was under the influence of alcohol, pushed her down to the ground and positioned himself on top of her body; she was unable to respond to a female friend of hers who was at the bottom of the hill because Mr. Gloshay had covered her mouth with his hand.  Pet. Ex. 6 at 3.

9.  Mr. Gloshay accepted responsibility for his offense conduct in a written statement:

> I have been abusing alcohol regularly for a number of years.  When I drink, I usually do so until I black out.  I believe that I drink because that is what my mother did every day while I was growing up.  On the day of this incident, I was drinking with the girl who was assaulted, and a friend, Roman Garcia.  She asked Roman to leave so she and I could be alone.  Because I was drunk, I may have misunderstood what she meant by that.  I do not recall what else happened after that and until I awoke, alone, in the area where we had all been drinking.  I have gone over all the police reports and statements with my lawyer and believe that I am guilty of the charge I pleaded guilty to.

Case 5:08-hc-02051-BR-JG   Document 76   Filed 11/23/11   Page 4 of 26

Since I have been in jail, I have not had any
alcohol.  I feel better than I have felt in years.
My physical and mental health has improved and I
believe that I must avoid any use of alcohol for
the rest of my life.  When I think about my life so
far, I now realize that I only got into trouble
when I was drinking.  I have trouble remembering
what I did when I was drunk.  I now know that this
is the wrong way to live your life and I believe
that I will no longer drink alcohol, even after I
am released from prison in the future.

I am ready to accept my sentence and am grateful
for the chance to become sober and think about my
life.  I apologize to the young lady involved in
this case and hope that she understands that this
happened because of the alcohol, not because I
wanted to hurt her.  Thank you for the chance to
tell you how I feel.  Pet. Ex. 6 at 5.

10.  According to the Presentence Investigation Report (PSR)

prepared for the 1994 conviction, Mr. Gloshay had zero criminal

history points, but he had the following un-scored matters, all in

1993, the same year as his offense conduct:  Possession by a Minor

(arrested July 2, 1993), found guilty in Jicarilla Apache Tribal

Court and sentenced to two days in jail and fined $30.00; Contempt

of Court (charged August 30, 1993), convicted and sentenced to 30

days incarceration; Assault and Battery (charged September 20,

1993) convicted and sentenced to 15 days in jail and fined

$100.00; Two counts of Contempt of Court (charged October 25,

1993) convicted and sentenced to 30 days incarceration;

Impersonation of a Tribal Official (charged October 28, 1993),

declined prosecution; Two counts of Contributing to the

Delinquency of a Minor, Sexual Assault of a Minor, and Indecent

Exposure or Handling (charged December 17, 1993), all four of
which were dismissed in Jicarilla Apache Tribal Court; and Three
counts of Assault and Battery and one count of False Imprisonment,
all four of which charges were related to the 1994 federal charge,
of which he was convicted and sentenced to serve 90 days
incarceration on each count. Pet. Ex. 6 at 7.

11. Finally, in its account of "other criminal conduct," the
1994 PSR reported that Mr. Gloshay allegedly committed aggravated
sexual abuse on April 26, 1993 (also in the year of his offense
conduct), in Whiskey Flat, Arizona, on the Fort Apache Indian
Reservation where he reportedly entered the victim's home through
her bedroom window, grabbed her, threw her onto a bed where he
forcibly removed her clothing and engaged in sexual intercourse
with her against her wishes. As a part of his plea agreement in
the 1994 case in New Mexico, the U.S. Attorney for the District of
Arizona agreed not to prosecute the April 26, 1993, allegation of
aggravated sexual abuse. Pet. Ex. 6 at 7.

12. When later asked about the alleged 1993 Arizona events
during his pre-certification evaluation process in clinical
interviews conducted on August 28 and 29, 2007, Mr. Gloshay is
reported to have said,

> I only talked with D_____ (the [alleged] victim)
> and then went to my cousin's house to drink. I
> stayed there all night. D_____ was telling a lie.
> Chester (a friend) told officials I was not there.
> Pet. Ex. 30 at 3-4.

13.  Mr. Gloshay was released from the 1994 sentence to begin serving his term of supervised release on or about March 9, 1998, living at his home in Dulce, New Mexico, but in April he failed to attend substance abuse counseling and changed his residence without permission, and in June 1998 a petition to revoke supervision and a warrant were issued.  He was arrested on July 31, 1998, and was released to the third party custody of his girlfriend, who later became the complaining witness in his subsequent 2001 case.  Pet. Ex. 19 at 9.

14.  On August 9, 1998, his girlfriend told the U.S. Probation Officer that they had been arguing and he had become increasingly aggressive, and a petition for revocation was submitted on August 14, 1998.  He was arrested on October 15, 1998, and, upon a modification of his supervision, he was placed in La Pasada Halfway House in Albuquerque, New Mexico, where he stayed through December 1, 1998, when he left and was subsequently placed on absconder status.  Pet. Ex. 19 at 9.

15.  He was arrested on January 5, 1999, and after a revocation hearing on January 11, 1999, his supervised release was reinstated, including a six month stay at La Pasada Halfway House where he was accepted on March 31, 1999, and stayed through May 24, 1999, when he was terminated unsuccessfully by the halfway house and, based on his unsuccessful termination by the halfway

house, his supervision was revoked on September 21, 1999, and he was remanded to the custody of BOP for term of nine months, without any supervision to follow.  Pet. Ex. 19 at 9-10.

### 2.  The 2001 Conviction

16.  Mr. Gloshay's second sexual offense arose out of allegations by his girlfriend, who had been his third party custodian in July and August 1998; on September 24, 2000, she alleged that he had raped her in December 1998, Pet. Ex. 19 at 4, and, upon his conviction by guilty plea to that allegation, the district court sentenced him to a term of 97 months imprisonment followed by supervised release for a term of five years.  Pet. Ex. 15.

17.  The offense conduct in the 2001 conviction involved his girlfriend who said that she and Mr. Gloshay began dating in June 1998, that he then moved in with her without her permission, and that they lived together from June through October 1998.  During that time, she said that he intermittently beat her with his feet and fists and sexually abused her by squeezing her breasts with his hands until she was bruised and that he penetrated her vaginally and anally with his hands, causing her to bleed, and forcibly penetrated her with his penis and when she told him to stop hurting her that his sexual advances and activities grew rougher.  Pet. Ex. 19 at 4.

18.  On December 21, 1998, she and a friend of hers walked toward their residence, and Mr. Gloshay appeared from around the corner of the house and attacked her.  He then forced her into the house where he beat her and vaginally raped her.  She said that she tried to scream for help but he covered her mouth with his hand.  During the assault her friend ran and hid in another portion of the house.  As a result of the December 21, 1998, sexual assault, Mr. Gloshay's girlfriend became pregnant and gave birth to a son in 1999.  Pet. Ex. 19 at 4.

19.  Mr. Gloshay accepted responsibility for his offense conduct in the 2001 conviction in a written statement:

> The victim in this case is my former girlfriend. We had been together since shortly after I was released from custody on my first federal conviction.  We got along well most of the time. The problem was that I did not stop drinking.  I was able to stay sober sometimes, but other times, when I drank, [she] did not want to be with me and that made me upset.  On the date of this incident, I was drinking and she told me to leave.  I got angry and forced her to have sex with me.  She became pregnant as a result.  For awhile after that, we lived together and I helped her with the baby.  Our problems started again, because my family did not think the child was mine and kept trying to break us up.  I became jealous of a former boyfriend of hers who my family told me was the father of the baby.  The baby looks just like me and I know he is my child.
>
> The worst part of this case is that because of my conduct, I will not have a relationship with my son.  I will be in prison for a long time and he will grow up without a father.  I understand that [she] will not want me around if I continue to drink and get jealous about everything.  I know

9

that this is my fault and I wish there was some way
I could change the past.  I hope that someday [she]
can forgive me for what I did to her and allow me
to have some type of contact with our son.  I know
that I must stop drinking if I want to see my son.
I would like to help him act better than I have in
my life and help him to see that he should not
drink or use drugs.  I still care about [her] and
our son and will try to show them that I can be a
better person than I have been in the past.  Pet.
Ex. 19 at 6-7.

20.  According to the PSR prepared by for the 2001

conviction, Mr. Gloshay had five criminal history points,

consisting of three points for the previous sentence of 51 months

plus two points because the 2001 matter charged conduct that

occurred in 1998, while he was under supervision from the 1994

conviction.  Pet. Ex. 19 at 10.

21.  In addition to reproducing the previous convictions

already recited in the 1994 PSR, the 2001 PSR reported the

following additional "other criminal conduct":  Unlawful Use of

Transportation, Minor Consuming Alcohol, False Information to

Officer, and Leaving the Scene of an Accident (Arrested November

2, 1991), dismissed; Two counts of domestic violence (charged June

22, 1995[1]) dismissed; and Domestic violence (charged February 4,

2000) dismissed.  Pet. Ex. 19 at 10-11.

---

[1] Note that, according to the same PSR as reports these 1995 domestic violence
charges, Mr. Gloshay was in BOP custody from December 22, 1994, through March
9, 1998.  Pet. Ex. 19 at 8, 9.

**C.**     **Bureau of Prisons Disciplinary History**

22.   Mr. Gloshay has incurred the following four infractions while in BOP custody: Refusing Work/Program Assignment (April 25, 2002); Fighting with Another Person (August 22, 2002); Possessing Intoxicants (June 16, 2007); and Possessing an Unauthorized Item (September 22, 2009). Pet. Ex. 28.

**D.**     **Sex Offender Treatment**

23.   While in custody for the 1994 conviction Mr. Gloshay participated in the BOP's Sex Offender Treatment Program (SOTP) in 1997, and the Court notes that his participation in that program was characterized by the BOP therapist who monitored his progress as "poor," "without introspection or concerted effort," "half hearted," and "very motivated," and the Court also notes that the BOP therapist who documented Mr. Gloshay's treatment treated him as a person who was "convicted of raping a 12 year old," Pet. Ex. 9, a description of his offense of conviction that is at odds with the PSR produced in connection with the 1994 conviction and the elements of 18 U.S.C. § 2241(a)(1), the statute under which he was convicted. Pet. Ex. 5.

24.   One of the special conditions of supervision imposed in the judgment for the 1994 conviction provided that he "shall enroll, attend, and successfully complete a mental health program for sex offenders as approved by the U.S. Probation Office," Pet. Ex. 5 at 2; Pet. Ex. 7 at 2, but on January 11 and February 18,

1999, he was violated during that term of supervised release for "fail[ing] to attend and successfully complete a mental health program for sex offenders." Pet. Ex. 10 at 1; Pet. Ex. 11 at 1.

25. When his supervised release was revoked and he was remanded to BOP custody on September 21, 1999, for a term of 9 months imprisonment, the district court "recommend[ed] service of sentence in a Federal Correctional Institution where the defendant can participate in an intensive alcohol abuse program and a sex abuse treatment program." Pet. Ex. 12 at 1-2.

26. One of the special conditions of supervision imposed in the judgment for the 2001 conviction provided that he shall "participate in sex offender treatment as directed by the probation officer and submit to risk assessment testing, including polygraph testing." Pet. Ex. 15 at 3.1.

27. Mr. Gloshay's original written judgment on the 2001 conviction did not recommend sex offender treatment while in custody, but an amended judgment for clerical reasons on that conviction recommended "service of sentence . . . close to the defendant's home and when eligible transferred to Federal Correctional Institution Butner, Butner, North Carolina (FCI Butner) to participate in the sex offender program." Pet. Ex. 16 at 2.

28. Mr. Gloshay was not transferred to FCI Butner until on or about October 26, 2007, which was approximately six months

before his scheduled release date of April 29, 2008, and, upon
arriving at FCI Butner, no programs or treatment were recommended
for him at that time, and neither did he report interest
participating in programs or treatment. Pet. Ex. 25 at 1.

29. From December 6, 2004, through December 20, 2005, Mr.
Gloshay successfully participated in the CODE Program at USP
Beaumont, "a demanding twelve month residential treatment program
for high security inmates interested in making positive lifestyle
changes. The participants are held to a higher standard of
behavior and they are expected to learn how to live by the tenets
Honesty, Responsibility, Tolerance, and Respect. The topics
covered in the CODE Program include (but are not limited to)
values development, goal setting, cognitive restructuring,
criminal thinking, stress management, parenting skills, wellness,
victim impact, interpersonal skills, anger management, and
relationship skills." Pet. Ex. 21 at 1.

30. At his exit from the CODE Program the program's
treatment specialist opined that Mr. Gloshay's "attitude was
satisfactory during the program. Mr. Gloshay seems motivated by
his artwork. He did not receive any infractions or incident
reports during the program. Overall, he was a fair participant in
the CODE Program," and the program's treatment specialist
recommended that he "enroll and participate in any available self-
help programs" and opined that he "needs to work on his

13

communication skills, substance abuse issues, eliminating sexual deviancy, and controlling his anger." Pet. Ex. 21 at 2.

**E.  Current Status**

31.  On April 16, 2008, 13 days before Mr. Gloshay was to be released to begin his term of supervised release and more than six months after BOP completed its Pre-Certification Evaluation Report, Pet. Ex. 30, the United States commenced this proceeding to commit Mr. Gloshay as a sexually dangerous person under the Adam Walsh Act, 18 U.S.C. § 4248.  DE-1.

32.  His commitment proceeding was stayed for more than two years pending appellate litigation of some constitutional challenges to section 4248, DE-2 (Order to Stay release and holding in abeyance "any further action in this matter," filed April 18, 2008); DE-8 (Order Lifting Stay, filed June 14, 2010). Eight days after the stay was lifted, Mr. Gloshay, through counsel, filed his Renewed Motion to Dismiss, raising equal protection and due process claims.  (DE-9, filed June 22, 2010) At the time of this filing, Mr. Gloshay shall have been held in BOP custody more than three and one half years beyond the expiration of his term of imprisonment.

**III.  EXPERTS' QUALIFICATIONS**

33.  The government filed the curriculum vitae (CV) of Rebecca Eileen Perkins, Psy.D. (DE-47-1 = Pet. Ex. 2), as a government selected expert on March 21, 2011.  Dr. Perkins is a

forensic psychologist at FCI Butner, where Mr. Gloshay is being held in custody. Dr. Perkins reviewed Mr. Gloshay's records but did not conduct a clinical interview of Mr. Gloshay. Pet. Ex. 1 at 1-2.

34. The government also filed the CV of Christopher North, Ph.D., (DE-48-1 = Pet. Ex. 4) as a government selected expert on March 21, 2008. Dr. North reviewed Mr. Gloshay's records but did not conduct a clinical interview of Mr. Gloshay. Pet. Ex. 3 at 1-3.

35. Mr. Gloshay had served notice that Logan Graddy, M.D., a licensed psychiatrist in private practice, had been selected as the respondent selected expert on March 9, 2011 (DE-40), and his report and accompanying CV was filed under seal (DE-41 = Resp. Ex. 1 and 2). The parties filed a joint motion asking that Dr. Graddy's report be withdrawn (DE-52), which request was denied on May 31, 2011 (DE-63), and Dr. Graddy was appointed as an additional mental health examiner selected by the Respondent on June 13, 2011, nunc pro tunc February 1, 2011. (DE-64) Dr. Graddy reviewed Mr. Gloshay's records, conducted a clinical interview, and four telephone interviews with four members of Mr. Gloshay's family.

36. The Parties did not challenge the qualifications of any of the above experts. The Court, having reviewed the curriculum vitae of the experts and their reports, and having heard their

testimony, finds that each individual is qualified by education, skill and experience to offer expert testimony in this matter.

### IV.  LEGAL PRINCIPLES

37.  Both constitutional and statutory legal principles come under consideration in this proceeding.

### A.  Section 4248 Violates the Equal Protection Clause.

38.  As a preliminary matter, this Court finds that § 4248 deprives Mr. Gloshay of equal protection of the law under the Fifth and Fourteenth and Amendments because there is no rational basis for § 4248's differentiation between individuals in BOP custody and individuals in the general public.  *Incorporated by reference, United States v. Timms, 5:08-HC-01256-BO (Eastern District of North Carolina, filed July 1, 2011),* ___ F. Supp. 2d ___ (E.D.N.C. 2011), 2011 WL 2610566.

### B.  Delay in the Proceeding Violated Mr. Gloshay's Due Process Rights.

39.  This Court also finds that the government's failing to bring Mr. Gloshay before the Court for a civil commitment hearing within a reasonable time after it filed the petition seeking commitment pursuant to §4248 deprived Mr. Gloshay of his due process rights under the Fifth Amendment of the United States Constitution.  *Timms.*

C.    **Standard of Proof and Nature of the Essential Elements**

40.   The government has the burden of proving each element by clear and convincing evidence.  18 U.S.C. § 4248(d).  The clear and convincing evidence standard is an "intermediate standard," lying somewhere "between preponderance of the evidence and proof beyond a reasonable doubt."  *Addington v. Texas*, 441 U.S. 418, 425 (1979).  The standard "has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established."  *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotations and citations omitted).  Authorities have also characterized the standard "as meaning 'highly probable.'"  *Direx Israel Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 810 n.7 (4th Cir. 1992) (quoting 9 J. Wigmore, Evidence § 2498 (3d ed. 1940)).

41.   The government must prove by clear and convincing evidence that Mr. Gloshay is a "sexually dangerous person," and the Act defines "a sexually dangerous person" as one who satisfies two elements, namely:  one "who has engaged or attempted to engage in sexually violent conduct or child molestation" and "who is sexually dangerous to others."  18 U.S.C. § 4247(a)(5).

42.   The Act further defines the element "sexually dangerous to others" in a description that itself includes two sub-elements, which may be characterized as a condition and causation, thus a

person is "sexually dangerous to others," under the Act, if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  18 U.S.C. § 4247(a)(6).

43.  Legislative history shows that Congress's definition of "sexually dangerous to others," as set out in § 4247(a)(6), is a legislative enactment of the principle of volitional impairment enunciated in *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 534 U.S. 407 (2002).  *See* H.R. Rep. No. 109-218(I) Section-by-Section Analysis and Discussion § 511.

44.  In *Crane*, the Supreme Court stated that the "serious difficulty" requirement is intended to distinguish the "dangerous sexual offender whose mental illness, mental abnormality or mental disorder subjects him to civil commitment, from the dangerous, but typical, recidivist convicted in an ordinary criminal case who, having been convicted and punished for one crime, proceeds through his own free choice to commit another." *Crane*, 534 U.S. at 413.

45.  Moreover, a finding of dangerousness, including both danger to self or others *and* mental abnormality or disorder is also constitutionally required.  *Kansas v. Crane*, 534 U.S. at 407-409, 410 (stating "we have consistently upheld involuntary commitment statutes . . .  [when] (1) the confinement takes place pursuant to proper procedures and evidentiary standards; (2) there

is a finding of 'dangerousness either to one's self or others,' and (3) proof of dangerousness is "coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality'" (*citing Kansas v. Hendricks*, 521 U.S. at 357-358; quotations omitted)).  *See also Foucha v. Louisana*, 504 U.S. 71, 82-83 (1992).

46.  Statute and due process require that, in addition to a volitional impairment, the government must prove by clear and convincing evidence that Mr. Gloshay poses a risk of re-offending that justifies a finding that he is sexually dangerous and therefore may be preventively detained.

## V.  FINDINGS

47.  The Court finds the following with respect to the essential elements:

## A.  Engagement or Attempted Engagement in Sexually Violent Conduct or Child Molestation, 18 U.S.C. § 4247(a)(5)

48.  Mr. Gloshay does not dispute the commission of the offenses for which he was convicted in 1994 and 2001.  The Court finds that this element has been established by clear and convincing evidence.

## B.  Suffers from a Serious Mental Illness, Abnormality, or Disorder, 18 U.S.C. § 4247(a)(6)

49.  Using diagnostic categories set out in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-FOURTH EDITION-TEXT REVISION (DSM-IV-TR), all of the experts who have evaluated Mr. Gloshay opine that

he suffers from a mental illness, abnormality, or disorder described in the DSM-IV-TR, but they disagree about all but one of the conditions he suffers from.

50. Dr. Perkins diagnosed Mr. Gloshay as suffering from Paraphilia, Not Otherwise Specified (NOS), Nonconsent; and Alcohol Dependence, in a Controlled Environment; and she provisionally diagnosed him as suffering from Antisocial Personality Disorder. Pet. Ex. 1 at 17.

51. Dr. North diagnosed Mr. Gloshay as suffering from Alcohol Dependence, in a Controlled Environment; Rule Out Paraphilia, Not Otherwise Specified (Coercive); Rule Out Sexual Sadism; Antisocial Traits; and Rule Out Antisocial Personality Disorder. Pet. Ex. 3 at 16.

52. Dr. Graddy diagnosed Mr. Gloshay as suffering from Alcohol Dependence, in a Controlled Environment, but he later noted, when listing risk factors for sexual violence, that Mr. Gloshay "does not have a major mental illness." Resp. Ex. 1 at and 7.

53. In sum, all three experts agree in the diagnosis that Mr. Gloshay suffers from the condition diagnosed as Alcohol Dependence, in a Controlled Environment, but they disagree on all other diagnoses that either of the others proposes, and Dr. Graddy characterizes him as "not hav[ing] a major mental illness."

54.  This Court finds that Mr. Gloshay suffers from the non-major mental illness, abnormality, or disorder identified as Alcohol Dependence, in a Controlled Environment.

## C.  Serious Difficulty Refraining from Sexually Violent Conduct or Child Molestation, 18 U.S.C. § 4247(a)(6)

55.  In addition to proving by clear and convincing evidence that Mr. Gloshay suffers from a mental illness, abnormality, or disorder, the government must also prove that whatever disorder Mr. Gloshay suffers from results in "serious difficulty refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(6), and, as already noted above, that statutory language implies a volitional impairment.

56.  The DSM-IV-TR is clear, however, that the fact that someone has been diagnosed with a mental illness or disorder does not answer the question of whether that person's volition is impaired.  Thus, in discussing its role in the forensic arena, the manual's preface states:

> .  .  .  It is precisely because impairments, abilities and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability.
>
> .  .  .  The fact that an individual's presentation meets the criteria for DSM diagnoses does not carry any necessary implications regarding the individual's degree of control over the behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular

Case 5:08-hc-02051-BR-JG   Document 76   Filed 11/23/11   Page 21 of 26

individual is or was unable to control his or her behavior at a particular time.  DSM-IV-TR at xxxiii.

57.  On the basis of various risk assessment tools, all three experts who examined Mr. Gloshay opined that, if released, he poses a significant risk of re-offending, they did not all three use the same risk assessment tools.

58.  Dr. Perkins used the Static-99R instrument and scored Mr. Gloshay at 8, placing him in a High Risk category for re-offending.  Pet. Ex. 1 at 21.

59.  Dr. North used three instruments:  Static-99R; Static-2002R; and MnSOST-R.  He scored Mr. Gloshay on those instruments respectively 6-8 (High Risk); 7 (Moderate-High Risk); and 11 (High Risk) for re-offending.  Pet. Ex. 3 at 20, 28, 29.

60.  Dr. Graddy used the SVR-20 (Sexual Violence Risk-20) and noted that Mr. Gloshay had 13 risk factors for sexual violence (history of suicidal ideation; substance abuse problems; relationship problems; employment problems; past non-sexual violence offenses; past supervision failures; high-density sex offenses; multiple sex offense types; physical harm to victims; extreme minimization or denial of sex offenses; attitudes that support or condone sex offenses; lack of realistic plans; and negative attitude toward intervention) and did not have four risk factors (no major mental illness; no escalation in frequency or

severity of sex offenses; not a victim of child abuse; does not have psychopathy). Resp. Ex. 1 at 7.

61.    Dr. Graddy further opined that, if Mr. Gloshay were found to be sexually dangerous that he would be "appropriate for a trial conditional release at a lower level of care," and such lower level of care "should include a substantive regimen of substance abuse counseling, psychiatric follow-up, and frequent participation in a twelve-step program. If possible, his sponsor and other natural supports should be informed of his history and should be in regular contact with supervising personnel. Mr. Gloshay would be appropriate to live in a group home or halfway house with limited supervision but without long periods where he is unsupervised. He should undergo frequent breathalyzer and drug testing. Deviation from the proscribe regimen should have swift consequences." Resp. Ex. 1 at 7-8.

62.    The Court finds that the government has not shown by clear and convincing evidence that Mr. Gloshay's current diagnosis of Alcohol Dependence, in a Controlled Environment, in fact, results in an impairment of his volitional control such that he would have serious difficulty refraining from sexually violent conduct or child molestation if released.

## VI.    CONCLUSIONS OF LAW

63.    The Court concludes that § 4248 deprives Mr. Gloshay of equal protection of the law under the Fifth and Fourteenth

Amendments to the United States Constitution because there is no rational basis for § 4248's differentiation between individuals in BOP custody and individuals in the general public.

64. The Court concludes that the government's failing to bring Mr. Gloshay before the Court for a civil commitment hearing within a reasonable time after it filed the petition seeking commitment pursuant to § 4248 deprived Mr. Gloshay of his due process rights under the Fifth Amendment of the United States Constitution.

65. The Court concludes that Mr. Gloshay has engaged in sexually violent conduct in the past.

66. The Court concludes that Mr. Gloshay suffers from the non-major mental illness, abnormality, or disorder identified as Alcohol Dependence, in a Controlled Environment.

67. The Court concludes that Mr. Gloshay's current suffering from the non-major mental illness, abnormality, or disorder identified as Alcohol Dependence, in a Controlled Environment, does not rise to the level of resulting in an impairment of his volitional control such that he would have serious difficulty refraining from sexually violent conduct or child molestation if released.

68. Having considered the reports, forensic evaluations, and testimonies of the three experts in this case, the Court concludes

that the government has not proven dangerousness sufficient to justify commitment by clear and convincing evidence.

## VII.   CONCLUSION

For the foregoing reasons, the Court should enter judgment in this matter that David Gloshay has suffered from the statute's violation of the Equal Protection Clause, that he has been deprived of his right to Due Process, and that he is not a "sexually dangerous person," and that his release from the custody of the Bureau of Prisons should be ordered.

Respectfully submitted, this the 23rd day of November, 2011.

CHESHIRE PARKER SCHNEIDER &
BRYAN, PLLC


 /s/ John Keating Wiles
John Keating Wiles
N.C. State Bar # 22379
133 Fayetteville Street
P. O. Box 1029
Raleigh, NC 27602
(919) 833-3114 (TEL)
(919) 832-0739 (FAX)
keat.wiles@cheshirepark.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Notice of Appearance has been duly served on the following:

    Edward D. Gray
    G. Norman Acker, III
    Michael James
    R. A. Renfer, Jr.
    Assistants United States Attorney
    800 Federal Building
    310 New Bern Avenue
    Raleigh, NC 27601-1461

    Michael D. Bredenburg
    Federal Medical Center
    P. O. Box 1600
    Butner, NC 27509

    Michael E. Lockridge
    Federal Bureau of Prisons, Legal Center
    P. O. Box 1600
    Butner, NC 27509

Service was made by electronically filing the foregoing with the Clerk of Court on November 23, 2011, using the CM/ECF system which will send notification of such filing to the above.

This the 23rd day of November, 2011.

                                   /s/ John Keating Wiles
                                  John Keating Wiles
                                  CHESHIRE PARKER SCHNEIDER &
                                  BRYAN, PLLC
                                  133 Fayetteville Street
                                  P. O. Box 1029
                                  Raleigh, North Carolina 27602
                                  (919) 833-3114
                                  keat.wiles@cheshirepark.com